**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| MWALIMU DEAN, Individually and For Others Similarly Situated,<br><br>v.<br><br>ATLAS OIL TRANSPORTATION, INC. | Case No. 5:20-cv-13237-JEL-APP<br><br>Honorable Judith E. Levy |

## JOINT MOTION FOR SETTLEMENT APPROVAL

For the reasons set forth in the attached Brief, Mwalimu Dean and Atlas Oil Transportation, Inc. jointly move the Court for approval of their Fair Labor Standards Act settlement.

Dated: July 15, 2021

| | |
|---|---|
| **STURM LAW PLLC** | **PLUNKETT COONEY, PC** |
| */s/ Charles Sturm* | */s/ Courtney L. Nichols* |
| Charles Sturm | Courtney L. Nichols |
| 712 Main Street, Suite 900 | 38505 Woodward Ave., Site 100 |
| Houston, Texas 77002 | Bloomfield Hills, MI 48304 |
| Telephone: (713) 955-100 | Telephone: (248) 901-4000 |
| Facsimile: (713) 955-1078 | Facsimile: (248) 901-4040 |
| csturm@sturmlegal.com | CNichols@plunkettcooney.com |
| | *Attorneys for Defendant* |
| **BRUCKNER BURCH PLLC** | |
| Richard J. (Rex) Burch | |
| 8 Greenway Plaza, Suite 1500 | |
| Houston, Texas 77046 | |
| Telephone: (713) 877-8788 | |
| Facsimile: (713) 877-8065 | |
| rburch@brucknerburch.com | |
| *Attorneys for Plaintiff* | |

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| MWALIMU DEAN, Individually and For Others Similarly Situated,<br><br>v.<br><br>ATLAS OIL TRANSPORTATION, INC. | Case No. 5:20-cv-13237-JEL-APP<br><br>Honorable Judith E. Levy |

## **JOINT BRIEF IN SUPPORT OF SETTLEMENT APPROVAL**

Mwalimu Dean ("Plaintiff") and Atlas Oil Transportation, Inc. ("Defendant" or "Atlas") (collectively, the "Parties") jointly request approval of their Fair Labor Standards Act ("FLSA") settlement. The settlement is the product of non-collusive, arm's length negotiations by experienced and informed counsel. It is a fair and reasonable resolution of a bona fide dispute. As such, the Parties respectfully request the Court approve the settlement and dismiss the case as outlined in the Settlement Agreement.

**I.    Relevant Background.**

Plaintiff filed this lawsuit (the "Lawsuit") alleging Defendant failed to pay certain workers overtime as required by the Fair Labor Standards Act (FLSA) and related state laws. (*See* ECF No. 1.) Specifically, Dean alleged Atlas paid its "travel team" members—FAS Operators and Frac Techs who traveled to various oil field sites in different

3

states—a fixed daily rate regardless of the total hours worked in a work week and did not pay overtime as required by the FLSA and related state laws. (*Id.* ¶¶ 34-61.)

To avoid protracted litigation and expense, the Parties agreed to engage in informal discovery regarding the merits of the case and the scope of the proposed class(es). Among other things, Defendant produced the records necessary for the parties to accurately estimate the potential damages. Plaintiff provided Defendant with a comprehensive analysis of the payroll records provided by Defendant. The Parties met on several occasions to discuss the legal and factual issues presented by Plaintiffs' claims, Defendant's defenses, and the potential issues regarding collective/class certification of the Lawsuit and settlement of the Lawsuit.

The Parties then retained retired United States Magistrate Judge Mona Majzoub to assist them in their settlement efforts. After substantial, arms' length negotiations at a full-day mediation, Judge Majzoub was able to help the Parties reach an agreement to settle the Lawsuit on a collective/opt-in basis. The terms of the settlement are memorialized in the attached Settlement Agreement. *See* Ex. 1.

The Parties identified a total of 63 potential class members who, for purposes of settlement, are agreed to have worked more than 40 hours in a week while being paid on a day-rate basis at any time between December 9, 2018 and March 5, 2021 (the "Settlement Class"). The members of the Settlement Class, and the settlement payment they will be offered, are set forth in Exhibit A to the Settlement Agreement. Each member of the Settlement Class will be mailed and emailed the Notice along with the

Claim Form, which are attached to the Settlement Agreement as Exhibits B and C, respectively.

## II. Settlement Terms.

### A. Benefits under the Settlement Agreement.

*1. Total Settlement Amount.*

The amount available under the Settlement Agreement is $900,000 if all individuals in the Settlement Class opt-into the Lawsuit ("Total Settlement Amount"). Ex. 1 ¶ 2(a). The Total Settlement Amount consists of: (1) the negotiated settlement payments eligible for distribution to the Settlement Class; (2) a separately negotiated amount of attorneys' fees and costs; and (3) a service award for Dean in the amount of $5,000. *Id.* The payments required by the Settlement Agreement shall be deposited into a Qualified Settlement Fund (QSF) established by counsel for Plaintiffs at Eastern Point Trust (https://www.easternpointtrust.com/index.html). *Id.* Defendant has made the initial deposit of $750,000.

*2. Payments to Members of the Settlement Class.*

Members of the Settlement Class who choose to accept the Settlement by timely returning a Claim Form (Exhibit 1-C) will receive settlement payments as follows:

(1) One half as back wages, from which taxes will be withheld (upon communications between counsel regarding same) and for which a W-2 will be issued; and

(2) One half as liquidated damages, for which a Form 1099 will be issued with the amount reported in Box 3.

Ex. 1 ¶ 2(b). Defendant will pay the employer's share of any payroll taxes owing on any portion of the Total Settlement Amount subject to payroll taxes. *Id.*

### B. Attorneys' Fees, Costs, and Expenses.

The payments offered to Settlement Class Members under the Settlement Agreement has not been reduced because of any contingent fee agreement. *Id.* at ¶ 2(c). Rather, the Parties negotiated independently with respect to settlement, attorneys' fees, costs, and expenses, which are reflected as part of the Total Settlement Amount solely for ease of reference. *Id.* Defendant will deposit the negotiated fees, costs, and expenses equal to $360,000, separate and apart from the Settlement Class payments (which are a portion of the Total Settlement Amount), into the QSF. *Id.*

### C. Claim Form and Release.

In exchange for the payments set forth in the Settlement Agreement, the members of the Settlement Class who choose to participate will release any and all wage claims against Defendant that accrued during their time on the travel team, including all claims under the FLSA and any applicable state laws. *Id.* at ¶ 3. Members of the Settlement Class must timely execute and return the Claim Form in accordance with the procedure set forth in the Settlement Agreement. *Id.*

Returning a Claim Form is required to join the settlement. *Id.* Settlement Class members who do not timely return a Claim Form will receive no payment from, and

will not be bound by, this Settlement Agreement. *Id.* The settlement payments offered to the Settlement Class members who do not timely return a Claim Form will not be distributed and will remain Defendant's property. *Id.*

Because only participating members of the Settlement Class will release any claims, Federal Rule of Civil Procedure Rule 23 does not apply: no "opt-out" class action is sought or will be certified. The only individuals that will be included in settlement are those who affirmatively elect to participate; Settlement Class members who choose not to participate will not release any claims against Defendant.

### III. Argument.

#### A. <u>Legal Standard for Settlement Approval of FLSA Claims.</u>

"In this circuit, whether an FLSA collective action settlement even requires court approval is an open question, and the other circuits are split." *Kis v. Covelli Enterprises, Inc.*, No. 4:18-CV-434, 2019 WL 3369124, at *1 (N.D. Ohio July 26, 2019) (collecting cases from the various circuits); *see also Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016) (noting that the Sixth Circuit has not definitively ruled on the issue). This Court, citing to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), has stated that "[j]udicial approval of settlement agreements in FLSA cases is necessary for an agreement to be enforceable." *Zambrano v. Motorcity Burger Co. Inc.*, No. 17-CV-10295, 2017 WL 1477111, at *1 (E.D. Mich. Apr. 25, 2017). In *Cheeks v. Freeport Pancake House, Inc.*, the Second Circuit determined that FLSA settlements have "unique policy considerations" such

7

that they "require the approval of the district court or the [Department of Labor] to take effect." 796 F.3d 199, 206 (2d Cir. 2015).

More recently, however, the Second Circuit has narrowed the holding in *Cheeks* considerably, determining that "judicial approval is not required of Rule 68(a) offers of judgment settling FLSA claims." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 414 (2d Cir. 2019). Indeed, the Second Circuit in *Hasaki* questioned the continuing validity of *Cheeks* entirely, noting that "Congress knows how to require judicial approval of settlements and dismissals when it wants to" and that "the text of [the FLSA] is silent as to such a requirement." *Id.*

But whatever the appropriate standard of review, it is met here. The proposed settlement is the product of non-collusive, arm's-length negotiation by experienced and informed counsel and falls well within the range of possible approval as the terms are "fair, reasonable, and adequate." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). Given the uncertainty caused by the lack of clear Sixth Circuit precedent, and because the Parties are confident that the Court's scrutiny will reveal the settlement to be a fair and reasonable compromise of a bona fide dispute anyway, the Parties have agreed to seek judicial approval of the settlement.

Courts in the Sixth Circuit have generally considered the following factors in determining whether a proposed settlement of a putative FLSA collective action is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the

8

parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016) (citing *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).[1] The above list is not exhaustive, and courts do not necessarily apply all of the factors. Rather, the factors are guideposts used to determine the fairness of a proposed settlement. "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case. These factors apply to settlement agreements made in FLSA actions, and must be considered along with the federal policy favoring settlement of class actions." *Id.* (internal quotations and citations omitted).

### B. The Settlement Resolves a Bona Fide Dispute.

A bona fide dispute exists if the parties actually disagree "over issues, such as FLSA coverage or computation of back wages." *Lynn's Food Stores*, 679 F.2d at 1354. In this case, Plaintiff and Defendant disagree as to both liability and damages: Defendant disputes it violated the FLSA in the first place, and it disputes the amount of damages it would owe each member of the Settlement Class even if it did. For example, on the latter point, Defendant denies liquidated damages should be awarded, and denies that a

---

[1] This and other Sixth Circuit courts used similar, though not identical, factors to analyze settlements "in non-collective FLSA cases." *See, e.g., Zambrano*, 2017 WL 1477111, at *1.

9

three-year statute of limitations is appropriate, both of which affect significantly the amount of damages that could potentially be owed to individual Settlement Class members under the FLSA. Accordingly, it is clear that a bona fide dispute exists between the parties.

### C. The Settlement is Fair and Equitable to All Parties.

If the settlement resolves a bona fide dispute, the Court considers if the settlement is fair and equitable to workers. Generally, "courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *David v. Kohler Co.*, No. 115CV01263STAJAY, 2019 WL 6719840, at *3 (W.D. Tenn. Dec. 10, 2019) (citing *Lynn's Food Stores*, 679 F.2d at 1353-54). An examination of the relevant reasonableness factors also supports the conclusion that the settlement is fair and should be approved.

*1. There Was No Fraud or Collusion.*

"In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Ross*, 2016 WL 7320890, at *3. To be sure, there is no evidence to the contrary: the Parties are represented by knowledgeable counsel, and reached this settlement with the assistance of well-respected United States Magistrate Judge Mona Majzoub (retired).

The lack of overreaching is also evidenced by the terms of the proposed notice process and scope of the release. Here, any potential plaintiff who does not opt into the settlement will retain all legal rights to pursue individual claims against Defendant.

10

Moreover, the proposed notice provides more than enough information to allow workers to evaluate whether to join the settlement. The scope of the release is also narrowly tailored to release those claims related to the allegations in the case (i.e., wage and hour claims).

There is nothing to indicate any overreaching of any kind by the Defendant or collusion between counsel. Accordingly, the Court should find that this settlement is the product of an arm's length negotiation between the parties.

### 2. *The Complexity, Expense and Duration of the Litigation.*

The complexity, expense, and length of continued litigation militate in favor of this settlement. Both sides acknowledge the Parties' respective positions are uncertain. Should this matter continue, the Court would be required to rule on Plaintiffs' pre-discovery motion for conditional certification under the FLSA, 29 U.S.C. 216(b), and court-authorized notice to the proposed class.

Once conditional certification is decided, any number of scenarios could result. If conditional certification is granted, the case will become more complex as the Parties would be required to undertake the notice process and allow for an opt-in period for employees to join the case. From there, the Parties will be engaged in discovery (potentially class discovery) for a lengthy period of time, likely followed by dispositive motions.

If Plaintiff ultimately prevailed at trial, Defendant would be faced with the prospect of a judgment that includes liquidated damages and a three-year statute of

limitations period. If Defendant ultimately prevailed, Plaintiff and any Class Members face dismissal of their claims and little to no recovery. The Parties agree either outcome is possible.

### 3. *The Amount of Discovery Engaged in by the Parties.*

The Parties engaged in class-wide discovery, including class-wide payroll production, in advance of the mediation. Plaintiffs' Counsel used this production to evaluate the strength and weaknesses of their claims, and also to create a class-wide damages model which was used at mediation. Such production allowed the Parties to participate in a well-informed negotiation at mediation, and ultimately resolve the case. Moreover, the fact the Parties participated in a mediation before a retired United States magistrate judge also supports the fairness of this settlement. *See, e.g., Tanner v. Empire Fin., Co. LLC*, No. 4:19-CV-0825-SEP, 2020 WL 7316115, at *2 (E.D. Mo. Dec. 11, 2020) (noting that "[t]he fairness of the [mediation] process by which the proposed settlement was reached, therefore, further ensures a just outcome").

### 4. *The Likelihood of Success on the Merits.*

Plaintiff's probability of success on the merits is uncertain, further suggesting this settlement is fair and appropriate. Moreover, the range of possible recovery by each Settlement Class member also is in dispute. Even if a class were certified and the plaintiffs succeeded on the merits, which would require substantial additional time and resources by all Parties, the exact amount of each individual Settlement Class member's recovery is uncertain. For example, Plaintiff would have the burden of establishing that

Defendant's actions were willful for the application of a three-year, rather than two-year, statute of limitations. Similarly, Defendant maintains that their conduct was done in good faith and thus that liquidated damages should not be awarded.

In addition to these risks, Plaintiff also face long-term collection risks due to the ongoing COVID-19 pandemic, which has without question wreaked havoc on the oil and gas sector.

By resolving their claims now, Plaintiffs avoid the considerable delay that extended litigation and potential appeals would have caused. And each Settlement Class member will net a significant portion—approximately 74%—of their claimed overtime wages using a best-case scenario three-year statute of limitations, with no deductions for attorney's fees or costs. This factor supports approval.

## 5. *The Opinions of Counsel and Class Representatives.*

Plaintiffs' Counsel's experience handling wage and hour class and collective actions is extensive and supports approval. *See* Ex. 2, Decl. of Richard J. (Rex) Burch. Defendant's lead counsel, Courtney Nichols, is also well-experienced in wage and hour litigation, and has extensive experience representing employers in FLSA collective actions.[2]

No collective action has been certified in this case, conditionally or otherwise. Nevertheless, the Parties are stipulating to send a proposed notice to all individuals in

---

[2] *See* Ms. Nichols' curriculum vitae, https://www.plunkettcooney.com/team-Courtney-L-Nichols.

the Settlement Class to inform them of this settlement and to allow them to join in the settlement. Plaintiffs' counsel and Plaintiff support this proposed settlement as a fair and reasonable compromise of the disputed issues for all members of the Settlement Class. This is evidenced by Plaintiff's signature on the settlement agreement.

### 6. *The Reaction of Absent Class Members.*

There are currently no "absent class members" in this case. In any event, no one is bound by this proposed settlement except the Defendant and any Settlement Class members who affirmatively "opt-in" to the settlement, so a worker with a negative reaction can simply do nothing and retain all their rights. Thus, this factor also supports approval (or, at the very least, it is neutral).

### 7. *The Public Interest.*

The public interest is served by the proposed settlement as it serves the purpose and intent of Congress in enacting the FLSA: "to raise substandard wages and to give additional compensation for overtime work … thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (quoting Sen. Rep. No. 884 (75th Conf., 1st Sess.)).

### D. **The Service Award Should Be Approved.**

In addition to each's Settlement Class member's negotiated settlement amount, the settlement provides Dean with a service payment of $5,000. This payment is in recognition of the time and effort provided in bringing this case and his involvement

14

in securing a resolution of this matter for a large group of workers. Courts routinely approve service payments if they are fair and reasonable. *See, e.g., Martin v. Safe Haven Sec. Servs., Inc.*, No. 19-CV-00063-ODS, 2020 WL 4816418, at *2 (W.D. Mo. Aug. 19, 2020) ("Service awards of $5,000 and $10,000 are not uncommon").

### E. Judicial Approval of Plaintiffs' Attorney's Fees Is Not Required or Requested (But Would Be Appropriate).

Not only is there is no clear Sixth Circuit precedent *requiring* judicial approval of this particular type of FLSA settlement (in the context of a lawsuit initiated by an employee represented by counsel), *see Kis v. Covelli Enterprises,* 2019 WL 3369124 at *1, even if there were, that authority would not likely extend to a review of *settled* attorney's fees. As the Eighth Circuit observed: "When the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim"—as happened in this case—"the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement. Thus, regardless of whether we read the statute as requiring approval for FLSA settlements, *we do not read it as requiring approval of settled attorney fees.*" *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (internal cites omitted, emphasis added).

Nevertheless, even if the Court assumed that it does have the authority to review settled attorney's fees, it should still approve them here as reasonable under these particular circumstances. *See, e.g., Paxton v. Bluegreen Vacations Unlimited*, No. 3:16-CV-523, 2019 WL 2067224, at *2 (E.D. Tenn. May 9, 2019) (approving fees as reasonable

upon the parties' representations that the fees did not compromise the class award and that the class is "receiving the full benefit of their negotiated settlement," citing *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)). As in *Paxton*, Plaintiffs' attorney's fees were negotiated separately from the negotiated payments eligible for distribution to the Settlement Class, *see* Ex. 1 ¶ 2(a), and the "payment to Settlement Class Members under this Settlement Agreement has not been reduced because of any counsel's contingent fee agreement," *id.* at ¶ 2(c).

The Parties do not request the Court review or approve the separately negotiated and settled attorney's fee and, respectfully, there is no jurisdiction to do so, *see Barbee*, 927 F.3d at 1027. However, even if the Court felt compelled to evaluate the settled fees, they are undoubtedly reasonable under the circumstances. After all, attorney's fees were negotiated separately and Class members are receiving the "full benefit of their negotiated settlement" **without** reduction for fees or costs. *See Paxton,* 2019 WL 2067224 at *2.

## IV. Conclusion.

This settlement is the product of an arm's length negotiation between experienced counsel and resolves a bona fide dispute over alleged unpaid overtime wages. The settlement is fair and reasonable, and provides Plaintiffs with substantial monetary relief in light of legal and collection risks should the litigation continue. Accordingly, the Parties jointly and respectfully request that the Court approve: 1) the

settlement as fair and reasonable, 2) the notice plan and notice materials attached, 3) and the requested service award to the Named Plaintiff.

Dated: July 15, 2021

| **STURM LAW PLLC** | **PLUNKETT COONEY, PC** |
|---|---|
| */s/ Charles Sturm* | */s/ Courtney L. Nichols* |
| Charles Sturm | Courtney L. Nichols |
| 712 Main Street, Suite 900 | 38505 Woodward Ave., Site 100 |
| Houston, Texas 77002 | Bloomfield Hills, MI 48304 |
| Telephone: (713) 955-100 | Telephone: (248) 901-4000 |
| Facsimile: (713) 955-1078 | Facsimile: (248) 901-4040 |
| csturm@sturmlegal.com | CNichols@plunkettcooney.com |
| | |
| **BRUCKNER BURCH PLLC** | *Attorneys for Defendant* |
| Richard J. (Rex) Burch | |
| 8 Greenway Plaza, Suite 1500 | |
| Houston, Texas 77046 | |
| Telephone: (713) 877-8788 | |
| Facsimile: (713) 877-8065 | |
| rburch@brucknerburch.com | |
| | |
| *Attorneys for Plaintiff* | |

## CERTIFICATE OF SERVICE

On the date stamped above, I served this document via the Court's ECF system.

*/s/ Charles A. Sturm*
_____
Charles A. Sturm